BAZIL G. O'BRYAN, APPELLANT, *vs*. WILLIAM M. REED, APPELLEE.

When, by a separate agreement, any submission is intended to be made a rule of court, an agreement to that effect in writing must be signed by the *parties*, and filed in the office of the clerk of the court of which said submission is to be made a rule. An agreement signed by one of the parties is not sufficient.

When after an award is made, the parties agree to open it, and refer the matters in difference between them back to the arbitrators, the agreement so to do will be a fatal objection to a motion asking that the award be made a rule of court, and that judgment be entered thereon and execution issue.— In such case, there is no award to be enforced.

Where the record shows admissions by the party seeking to enforce the award, that matters had been submitted to the arbitrators which were not adjudicated by them, and that others were adjudicated which they omitted to state in their award, the award, it would seem, should not be enforced, in the face of such acknowledgments.

If an agreement to open an award is signed by the attorney of one of the parties, though he had no authority, yet, if the party for whom he assumed to act subsequently ratifies the act, it is valid.

Appeal from the Circuit Court of Hamilton County.

The record in this case shows the following state of facts : The parties on the 13th of April, 1847, mutually executed bonds, and

agreed to submit all matters in controversy between them to arbitrators, to be indifferently chosen by them, which was done.

On the 23d of April of same year, the arbitrators, so chosen, made an award—by which, among other things, they awarded to O'Bryan, the appellant, the sum of four hundred and seven dollars and ninety-seven cents.

At the foot of the bond of submission, signed by Reed, the apellee, there is an agreement also signed by him, but not by appellant, to the effect, that the award be made a judgment of the Circuit Court of Hamilton County.

Subsequently, the parties agreed to open the award, and to submit to the arbitrators all matters which they had failed to adjudicate, and all such as they had adjudicated, but had not set forth in their award. No other award was ever made by the arbitrators.

At the spring term, 1848, of the Circuit Court held in and for the County of Hamilton, the appellant, by his attorneys, moved that the bond of submission and award be made a rule of court, as stipulated and provided for in said bond, and that judgment be entered thereon and execution issue according to law. This motion being heard at the fall term of said court, the Hon. THOMAS BALTZELL presiding, was overruled.

From this decision, the appellant prayed an appeal, which was granted.

*Randall*, for Appellant :·

The record in this case sets forth the rule which was applied for and refused, and on the refusal of which, error is predicated.

The stipulation that the award be made a rule of court, also appears of record.

The award was made and signed, 23d April, 1847, but no where does it appear when it was *published*—by delivery of a copy, or other notice.

On its face and in its terms, it is *final* and *complete*, as respects the matters in controversy. It declares and decides, in the outset, that Reed is indebted to O'Bryan, in a certain sum absolutely due, viz : the sum of $407 97-100.

It then directs and awards certain acts to be done and omitted by plaintiff, O'Bryan, which we prove by his own affidavit, and by that of Purviance, one of the arbitrators, that he (O'Bryan) fully com-

plied with, doing what was prescribed to him, and omitting to do what was forbidden him in the award.

It is fully in proof, also, that defendant, Reed, accepted at his hands performance of the acts enjoined upon O'Bryan, such as the return of the draft or order on Blood; that Reed also received the benefit of the withdrawal or dismissal of the suits then pending against him; that he held on to the joint chattels reserved to him by the award, and the debts or claims due to the partners mutually for lumber.

There is no evidence that defendant, Reed, has done one act, either to comply with the terms of the award, or to set it aside by course of law, further than by opposing the granting of this rule.

No motion or ruling was made or attempted in court to carry out the provisions of the bond of submission, or to enforce or set aside the award, until the rule entered by O'Bryan in February, 1848.

The cause of this delay, as appears by the proofs, was the effort made by the parties (which failed through Reed's opposition) to settle their dispute amicably, *on the principles of the award,* and without invoking the aid of the court; *but we deny* that O'Bryan ever consented or designed to give up or release the award made.

The *proposal* (for it in effect was no more) *to open* the award, to make it "more in form"—not being legally executed by Reed, but the act of his attorney in signing his name to it being disavowed, and found fault with—was no more than a mere inchoate, unexecuted *projet*—not binding on either, and left the original award unimpaired and in full force.

Moreover, it will be seen that such projected new submission did not profess to do more than to make the original award more formal, and to extend to O'Bryan a longer time to return the order on Blood, or to indemnify Reed for its *non-return*—a matter rendered altogether useless and superfluous by O'Bryan's actual return of said order, as proved by Purviance. That proposed submission also provided, "that the award be entered on the docket of the court."

No new valid submission, then, having been made—no new *award* allowed to be made by defendant—*the old award,* the only one in the cause, stood good, until *set aside,* on motion and proofs of its illegality or insufficiency, by one or other of the parties.

In the court below it was objected, that the application for the rule was too late—that it should have been made at a prior term of court,

the term next after the date of the award, viz : at the fall term, 1847.

To this objection we have a two-fold answer. One, a denial of the fact on which it is founded ; and next, as to the law applicable to the fact assumed.

1st. We answer, the objection assumes (from the absence of proof) that the award was made when it bears date. This by no means follows : for *in legal contemplation*, until the parties are duly notified by delivery of a copy, if the submission so provide, or by *publication*, it is no award. 2nd Archbold's Prac., 1251, (note.) Watson Arb. & Aw., p. 131, last. Edn. p. 81, old edition. 2d Archbold's Prac., 1230.

Here, too, it appears in the proofs, that the award was *retained* or held back, by mutual consent and for further negotiations, which, however, ultimately led to nothing.

But, before proceeding to the other branch of the inquiry, viz : *the law applicable to the fact*, it may be convenient to dispose of another objection, which was, " that the submission should have been made a rule of court, prior to the award being made." This we respectfully deny to be the law in England, or in Florida. , In England, under the statute 9 and 10th William III., sec. 15, (which corresponds substantially with our act of the Legislature on the same subject,) the *submission* and *award* may both be made a rule of court *at the same time.* Watson Arb. & Aw., p. 14, top. 27 & 8 margin, and cases cited. For the statute 9 & 10 Wm. III., sec. 15, see p. 13 & 14, Watson's old edition—p. 46, new edition.

The language of Watson is, " that where there is consent of parties to this effect, the statute has been construed largely," &c.; and " thus a consent in the arbitration bond to make the award a rule of court instead of the submission, will, it seems, warrant the interposition of the court under the act."

Let the court now compare the terms of the act of Florida, (p. 399 of Thompson's Digest,) with the statutes of 9 & 10 Wm. IIId., and it will be seen that they alike say, " That the *submission* shall be made a rule of court," &c. Yet such terms justify the parties, *when they consent*, to make the *award*, as well as the submission, a rule of court ; and for the very obvious reason, that the *award* in such a case becomes *part* of the submission, if not the very submission itself.

8

And now recurring to the first objection, that our rule was not entered in time, and waiving the answer, that "*non constat,*" when in legal contemplation the award was made, we answer as to the law.

2d. By denying that there is any thing in our statute, which imposes the duty *upon the party claiming the benefit of the award,* and *seeking its enforcement,* to have it entered a rule of court, at the term *next ensuing* the making thereof.

On the contrary, we hold, that the only provision of the statute, viz : the 4th section, limiting the time of filing a rule, contemplates and embraces the proceeding on the part of him who seeks *to set it aside,* and not of *him* who claims its benefit, and *seeks to sustain it.* See 4th sect., act Nov. 17, 1828, Thomp. D., 400. Duv. 236. Here it is manifest, that the time prescribed is *by way of* limitation, but it applies alone *to the party who moves to set it aside.*

If it be objected, "that the party last referred to could not make such motion before the submission and award were filed," we answer—That it is perfectly competent for either party to make such preliminary motion *to enter the rule,* with a view to the final action of the court, either to set it aside, or to establish it as the judgment of the court. The submission and award belong equally to both parties, and their rights are reciprocal.

It is laid down in Watson, (new ed., p. 265,) that the entering the submission a rule of court, is an essential preliminary to *any motion* touching the award. And in 2d Arch. Pr., p. 1253, it is laid down as the first practical proceeding to set aside an award.

Thus, then, Reed, who now objects to this award and seeks to set it aside, or *rather to treat it as a nullity,* should *himself* have made the preliminary motion or rule, to enter the submission, &c. to secure redress, if the award were liable to be impeached.

An award made under a submission by deed, stipulating that the same be made a rule, and become the judgment of a court of record, (as is the case before the court,) is a grave and solemn *act* and creates liabilities on both sides, which may not be lightly avoided, or escaped by inaction and neglect.

The statute of 9 & 10 Wm. III., and the Florida statute on the same subject, and in effect and substance the same, (the last being no doubt substantially copied from the first,) *both* limit the time to make motions to set aside awards ; and by reference to Watson, (new ed., p. 269, old ed., p. 156,) and to 2d Arch. Pr., p. 1251, (Lon-

don ed.,) it will be seen that the utmost rigor is insisted on as *to time*, and scarcely an excuse allowed for delay, when the object is to defeat these salutary domestic judgments.

And now, as to the construction of the Florida act, where in the absence of *decisions* under that act, we must resort to analogous reasoning. By the 4th sec. of the Florida statute, (p. 401 of Thomp. Dig.,) the motion to set aside the award must be made at the term ensuing—that is, (it is conceived,) at the term next after the rule is entered, or at the same term, if ten days' notice of such motion can be given. But let it be borne in mind, that, under the doctrine and directions cited above, from Watson and Archbold, the defendant himself might have entered the rule of court, at his own pleasure and convenience, whereon to ground *a motion* to set aside the award. But relying as he did upon our taking the initiative, and moving the rule, that section would have given him the whole of the spring term to make such motion.

Next comes the 6th sec., (Thomp. D., 401,) which provides that " if no motion be made to set aside any award, &c., it may be entered of record at the ensuing term of said court." " Ensuing term of said court ?"—ensuing what ?

Why, evidently, ensuing that term wherein the other party had time to the end thereof (the court not holding ten days) " to move to set it aside." This is certainly the most reasonable principle of construction, and one which assimilates this proceeding to all others, where time is given to a party *to object*, on " *rules nisi*," or other proceedings.

No such rule can be made absolute—no interlocutory or other order or judgment be confirmed, until such time shall have elapsed.— The motion to confirm or make absolute is always postponed, until the time allowed to vacate or set aside shall have expired.

The language of the section is, " If no motion be made to set aside any award made as aforesaid, it may be entered of record at the ensuing term of said court, during the term thereof."

According to every rule of grammatical construction, the term "ensuing" must of necessity refer to the next and only antecedent, viz : " The motion to set aside the award," which, by the 4th section, must be made at the first " term ensuing the filing of the same."

Reason and grammatical construction, and uniform decisions under a similar law, concur in this interpretation.

Suppose the counsel of Reed had moved at the spring term, 1848, after entering on the order book the rule moved by plaintiff, (and nothing we have seen prevented him from anticipating the action of plaintiff,) and had moved then " to set aside the award."

" *Ex debito justiciæ*," or ",*ex gratia*"—as a matter of legal right, or by indulgence of the court, (the term consisting of less than ten days,) that whole term would have been allowed him wherein to make such motion.

So, if *plaintiff* had, at the fall term, 1847, (the first term ensuing the making of the award, taking *its date*, and not its *publication*, as the test of when made,) then entered his motion to make the award a rule of court, he could not have had his rule made absolute, for the same reason, until the spring term, 1848, when he did apply for it.

But that motion being made first at the spring term, 1848, of necessity the rule or order to set up and establish must have been postponed until the next, or ensuing term, viz : the fall term, 1848.

The court will see that defendant has altogether failed at any time to move in the matter. He has availed himself of all the privileges and advantages of the award, (as our proofs exhibit,) he has thereby (we contend) waived all legal right of making said motion, or of impeaching the award, on any grounds, but of legal defects apparent on the face of the proceedings.

And now, on general principles, we would ask, what reason can apply for coercing a party seeking to sustain an award to this extreme diligence, in limiting him to a short day, wherein to enter his rule ?

It is not usually the policy of the law nor needful, to oblige the creditor or claimant to use summary or stringent methods to obtain the benefit of his claim. His own interest and selfish feelings, in such case, usually require restraint, rather than stimulants to activity.

Our proofs further show and assign a satisfactory reason for the short delay ; and not a suggestion has been made that defendant was injured thereby. Delay is what the debtor seeks as *beneficial*, what the creditor avoids as *injurious*.

The policy of England and of this country both concur in sustaining awards, the judgments of those cheap " domestic forums."—No stronger evidence of this is required, than the laws passed to encourage them, and the liberal and *enlarged* principles of construction applied to them universally.

The award and submission here are both in writing and under seal, and their evidence of a certain, durable character. Had they been by "parol," there might be reason for *urgency* in setting them up.

And yet awards may be made by "*parol*," if the terms of the submission do not forbid it; and it seems the courts can enforce the execution of parol awards by *attachment.* Watson on Arb. & Aw., p. 307, 81–'131.

So also the submission may be by "parol." Same, p. 6. But it is conceded that neither in England, nor under our law, could such be made a rule of court.

But, again, we ask the court to regard the terms of this 6th section? They are—"it (i. e. the award) *may be* entered of "record at the ensuing term of said court."

The term, "*may be*," is *directory* and *permissive*, not *imperative* or *restrictive.* The permission is for the advantage of the party seeking it. The statute states the *nearest*, but not the *latest* time for its exercise.

The legislature could not contemplate, that a party seeking to recover his debt would himself cause needless delay, nor would they be likely to deem any limitation of time in such case necessary.

Lastly, it appears that this time or delay was agreed to in this case as a mutual favor; and, further, that while the defendant has received all the benefit of the provisions of the award in his favor, plaintiff, by this very arbitrament and award, has parted with every thing, and received nothing.

*W. P. Duval,* for Appellee :

I. In this case no bill of exceptions is filed. Such facts only can become a part of the record and be brought before this Court as are contained in a bill of exceptions. The exceptions must be taken and signed at the trial of a cause, unless further time for making them up be given by the Judge. 2 Tidd's Prac., 910, 911. 9 Wheat., 651. 5 Cond. U. S. R. 4 Peters, 102. 5 Id. 248. 4 How. 4, 298.

Therefore, the affidavits of B. G. O'Bryan and H. E. Purviance, the notice to Reed by O'Bryan, on page 2nd of the record, and the statement of facts by the clerk, on page 14, except that the motion was argued and disposed of, cannot be noticed by this Court. Besides, such testimony is illegal in a proceeding in arbitration. The

Court can have before it only the submission bond or agreement, the award and the entries by the clerk of the proceedings on the record; except where motion is made to set aside an award, when the statute (Duval, 236, sec. 5,) allows affidavits to be received.

II. The Appellant is not entitled to his motion that the award be made a rule of court, because,

1. There is no "award" on which the court can act. There is a writing, purporting to be a bond, by Reed, to submit to an arbitration, 13th April, 1847. An award was made, in pursuance thereof, signed 23d April. An agreement was then entered into between the parties, (endorsed on the award,) that the award should be opened, omissions inserted, various other material alterations made and, in fact, a different and new award made by the arbitrators. No such new award appears on the record. By the Appellant's own agreement, then, there is no award that can be made a rule of court.

But the Appellant alleges that this agreement is void, because it is proved that Reed disavowed the authority of his attorney to sign the agreement. The evidence of this disavowal, he says, is in the affidavits. It has been already shown that the affidavits had no place in the record. Moreover, they show only that the affiant *understood from Peden that Reed denied his authority.* But Peden, as attorney at law, could submit the case to arbitration. 7 Cranch, 436. 4 Cond., 560. Buckland v. Conway, 16 Mass., 396. Talbor v. Mc-Gee, 4 Munroe Ky. R., 377. Evans v. Thompson. 5 East., 189.— 3 East., 466.

2. If the agreement between O'Bryan and Reed be void and we take only the bond of Reed and the award in pursuance of it, there can be no rule entered.

There must be mutuality in a submission to arbitration—a mutual bond or agreement. 2 Arch. Prac., 323. The statute, (Duval, 236, sec. 2,) requires that the agreement be signed by the *parties.* They must both consent. There is no evidence of such mutuality of consent on the record. But one bond is filed, and that signed by Reed alone. If the consent of one only is sufficient, what would be the consequences ? The one making it is liable on his bond in case he do not perform the award, and is liable if he choose to revoke his submission before award made and rule of court entered. 2 Arch. Prac. 324. But there is no bond or agreement to hold the one not consenting to the performance of the award. Should the award be

that he should pay money, judgment could not be entered against him. He has entered into no agreement that execution might issue against him. It can be issued only where he has made the consent *in writing*, and the rule is entered in pursuance of it. If the award be that the party signing the consent do something else than the payment of money, and he do not perform, he is considered in contempt of court and will be put in jail. Duval, 236. But he not signing is clear of any such consequences. The court has no hold on him. The record shows that he has not submitted to its authority. Such a one-sided proceeding would be contrary to the statute and to every principle of law.

3. This award can never be entered of record. The statute, Duval, 236, directs that it be entered at the *ensuing* term of Court. It is attempted to be enforced the second term after it was made.— Where a party pursues a mode allowed by the statute he must comply precisely with the course it points out.

4. An award should be so plainly expressed that there would be no uncertainty as to the manner in which it is to be executed. Schuyler *v.* Van Derbeer, 2 Caines, 235. See also 9 Johns., 43.

A part of the award is that "the order given O'Bryan by Reed, on Blood, (amount, one hundred and sixty-seven dollars and eighteen cents,) be returned to Reed within thirty days, or charged to O'Bryan and deducted from the above award." It is not *certain*, though probable, that the intention of the arbitrators was that $167 18 be deducted from $407 97. Other things respecting money are awarded after the $407 97, before this order on Blood is reached. There is a more material uncertainty. Shall O'Bryan return the order, or shall he have the option of having it charged to him by Reed. See Barnes, 166. Or is it to be returned to Reed within thirty days, and if not, then to be deducted from the award. This is a matter of speculation.

5. The award should have been final, which it is not. In Pedley *v.* Goddard, 7 Term R., 73, the defendant was to pay plaintiff a sum of money within twenty-one days, (which was after the time limited for making the award,) unless defendant should exonerate plaintiff, by affidavit, from certain payments and receipts. The award was held not to be final, and void. In this case the award on the order to Blood is also in the alternative and allowed to be performed within thirty days, which was after the time limited for making the award.

There is nothing certain or final as to " the order on Stewart."—
Who is to have the order ?    Shall Reed ?   Probably.   Has O'Bryan
got it in his possession, and is he to deliver it to Reed ?   Suppose he
has it ; there is no award that he deliver it to Reed.

The award is, in respect to other matters, uncertain, defective and
not final, and therefore void.

The agreement endorsed on the award shows that it was otherwise
defective and incomplete.   The admission of O'Bryan, to this effect,
is equal to an affidavit to set aside the award, or an admission of
mistake by the arbitrators.

6. Where there is no cause in court, the award, as to costs, de-,
pends entirely upon the terms of submission.  If the submission gives
the arbitrator no authority as to costs, he cannot award them.—
Arch. Practice, 228.   In this case no such authority was given.

*Randall*, in reply :

In answer to the first point taken by Counsel for appellee, it will
be sufficieut to say that there was no occasion whatever for a bill of
exceptions.   The ruling of the court appealed from was on a motion
in writing, founded on specialties and sustained by affidavits, with a
view to a statutory remedy.   Thomp. D., 399.

By reference to English works touching the enforcing of the per-
formance of awards, (2 Arch. Prac., 1255,) it will be seen that affi-
davits are required from parties seeking the enforcement.   And this
answers the assertion on the other side that affidavits are only ad-
missible on the part of him seeking to set aside the award.

The terms of the 5th section of the Florida statute, (Thomp. Dig.,
400,) repudiate this notion.

· To the second point taken by Counsel for appellee, the argument
already made is deemed a sufficient reply.   So, also, with regard to
the third and fourth objections.

As to the fifth, the Court need only turn to the case referred to un-
der this head, in 7 Term R., to see that there is not the least simi-
larity in the cases.   Every thing that was directed to be done by
O'Bryan has been done.   If the directions of the award have, in all
respects, been complied with by him, and Reed has had the benefit
of the compliance, it is final.

Opinion by Chief Justice Douglas :

This case comes up by appeal from a decision of the Circuit Court

for Hamilton county, made at the last Fall term, overruling a motion which had been entered upon the order book of said Court ; and a bond of submission and award, filed 17th day of February, 1848.— This motion was at the spring term of that year continued until the said fall term, and is in the following words, to wit : " *Ex parte*.— Basil G. O'Bryan, in a matter of arbitration between said Basil and William M. Reed, Middle Circuit of Florida, Hamilton Circuit Court. Motion that the said bond of submission and award be made a rule of court, as stipulated and provided for in said bond of submission, and that judgment be entered thereon and execution issue according to law."

The first section of our statute, entitled an act concerning arbitration and awards, (Duval's Comp., 255, Thompson's Dig., page 399,) provides for submitting matters of difference, &c. to arbitration, and declares that the parties to such submission " may stipulate and agree either in the bond, &c. of submission, or by a separate agreement, that the said submission and arbitration shall be made a rule of any court in this State ;" and the 2d section enacts, "That when any submission is intended to be made a rule of court as aforesaid, an agreement to that effect in writing, *signed by the parties*, shall be filed in the office of the clerk of the court of which said submission is to be made a rule, and the clerk shall enter said rule."

The motion was made by the appellant, and it appears by the record of the proceedings in the cause, including certain affidavits filed by the appellant in the court below, (but which the appellee by his counsel insists are not a part of the record, because they were not brought into it by a bill of exceptions,) that, on the 13th day of April, 1847, the parties to this proceeding, under bonds mutually executed by them, agreed to submit all matters in controversy between them to arbitration—that arbitrators were mutually chosen by them, to whom those matters were submitted, and that said arbitrators, on the 23d day of April, 1847, made an award.

At the foot of the submission bond of the appellee, the only one in the record, is the following, viz : " And it is further agreed that said award be made a judgment of the Circuit Court of Hamilton County, and said State"—which agreement is signed by (Wm. M. Reed) the appellee.

Whether such an agreement was appended to the bond by O'Bryan or not, the record does not show ; and there is no authority to enter

such a rule, unless the agreement to that effect in writing, *signed by the parties*, be filed ; at least such is the express provision of the statute, from which we should not be inclined to depart, without some good cause shown, (if at all.)   Here no cause is shown—it does not appear that there is any such agreement signed by the parties ; or if, upon the equity of the statute, separate agreements signed by the parties were sufficient, and we were at liberty to presume that O'Bryan had signed one at the foot of his bond ; it is not shown that any effort was made to have it filed in court.   If, therefore, such an agreement was signed by O'Bryan, it cannot affect the case ; but besides this, although the motion to make the submission and award a rule and judgment of the court, is alleged to have been made pursuant to that agreement, and substantially in accordance with it, yet we find by reference to the record, that, after the award was made and published, an agreement was entered into by and between the parties, that it should be opened and the matters referred to the same arbitrators, to make a new award ; and that it was thus referred back, and one of the arbitrators, (Mr. Purviance,) whose affidavit was taken and filed by the appellant in the court below, in support of said motion, states that he did, at the instance of the said O'Bryan and Peden, acting as attorney for Reed, make out the *draft* of another *award*, but the said draft was never executed or signed by the arbitrators.

It has been objected on behalf of the appellant, that there is no evidence to show that said Peden had any authority from the appellee to make the said agreement to open the said award, and that the appellee disaffirmed the agreement, and denied his authority to make it ; but in looking into the affidavit of Mr. Purviance, before mentioned, which contains all that is said in the record of any such disaffirmance and denial of authority, we find that he states as follows, viz : After stating that the arbitrators under the bond of submission mutually executed between them, said O'Bryan and Reed, dated the 13th April, 1847, made an award, which was designed to be a final award at the time, goes on to say, "That subsequently the parties met at the house of the affiant, for the purpose of further negotiating touching said award, with a view to explain away obscurities in it, (if any such existed,) and to extend the time for O'Bryan to return the order on Blood, or make indemnity for the same."   " That, at such meeting, *Reed was represented* by *James A. Peden, Esq., his*

*attorney*, who made and signed an agreement touching the award, which affiant afterwards understood from Peden that Reed disaffirmed, and denied his (Peden's) authority in the 'premises." Now the latter clause, " which affiant afterwards understood from Peden," &c., is all that the record discloses of the disaffirmance and denial of Peden's authority by Reed ; and that, it will be observed, is hearsay testimony only, and is opposed by the statement of Purviance himself who says Reed was represented by *James A. Peden, Esq., his attorney*, and by the action of Reed in relation to this matter, who, when this motion came on to be argued in the court below, objected to any judgment on the award, and assigned amongst other reasons this : " because by the terms of the agreement attached to the award the same was opened, and another was to be·made, thereby sustaining this statement of Mr. Purviance, and recognizing and affirming the acts of James A. Peden, Esq., *as* his attorney in the premises ; and now, in this Court, he again recognizes and re-affirms it, by objecting to a reversal of the judgment rendered by the court below in this case, upon the same grounds. It is a familiar principle, that " the acts of one having no authority will be made valid by the ratification of the person for whom he assumed to act." Lent *v.* Padleford, 10 Mass. Reps., 230, 236. Odiorne *v.* Maxey, 13 Mass. Reps., 178, 182. Wood *v.* Carpenter, 4 Wendell's Reps., 219. Baker *v.* Byrne, 2 Smedes & Marsh, 193. A principal may recognize an authority, " *ex post facto*," and make the act his own. Haggles *v.* Washington County, 3 Miss. Reps., 496. 3d U. States Dig., 244. 2 Kent's Comm., page 478.

By this agreement, the award was opened, and, therefore, there is now no award to be enforced, and this of itself is a fatal objection to so much of the motion as asks to have " the award made a rule of court, and that judgment be entered thereon and execution issue," and saves us the necessity of enquiring whether this would have been the proper mode of enforcing such an award, and of looking into the other objections against it which have been presented for our consideration.

There is one matter, however, in relation to this award, which we deem it proper for us to notice, which is, that, by the agreement to open it, the parties agreed " that the arbitrators insert all matters which they *have omitted*, in the purview contained, and which they *have adjudicated, but omitted to set forth.*" This agreement, it is to

be observed, is signed by the appellant, and if it were not valid as an agreement to open the award, for lack of authority in Peden to make it, still it would seem to be a sufficient acknowledgement by the appellant that matters had been submitted to the arbitrators, which were not adjudicated by them, and that others were adjudicated, which they omitted to state in their award, and with such omissions before us acknowledged by one of the parties, we should hesitate much before we should make an order to enforce the award against the other : for that an award does not embrace all matters submitted to the arbitrator, is one of the very reasons assigned in the books for setting it aside. Watson on Arbitration and Award, 159, 8 Law Lib.

Whether the affidavits referred to are properly a part of the record or not, is of no importance to this case, as our decision would have been the same, had they not been in it. We looked into them to ascertain if they really contained any legal and substantial proof of the alleged disaffirmance and denial of Peden's authority by Wm. Reed, the appellee. Had they done so, we might have felt ourselves constrained to examine that question. Finding, however, that they contain no such proof, and that the hearsay evidence on the subject is more than neutralized by the positive statement of the same witness, and what is of more importance, the authority of Mr. Peden having been fully recognised and affirmed by the appellee, and no agreement, such as the statute prescribes, to make the submission a rule of court, having been filed, we can perceive no error in the judgment of the court below.

If such an agreement had been filed, or if it had been clearly shown that an agreement to make the submission or award a rule of Hamilton Circuit Court had been appended to the bond of Mr. O'Bryan, the appellant, and that he was unable to file it from the fault of the appellee, or his refusal to permit him to do so, or at least without any fault on his own part, we are not prepared to say but that the motion ought (under such circumstances) to have been so far sustained, as to have permitted the rule to be entered, to stand until a new award should be made. There seems to have been no time limited in the agreement to open the award, within which the new one was to be made ; as no such agreement was filed, and no such proof was shown, it is unnecessary for us now to decide that question. For the reasons stated, the judgment is affirmed.

*Per curiam.*